## Hicks' Estate

*Samuel H. Jubelirer*, for exceptants.
*R. C. Haberstroh*, contra.

FETTERHOOF, J., specially presiding, September 4, 1940.—William B. Hicks, late of Altoona, Blair County, Pa., died testate May 10, 1938, having executed his last will and testament on May 8, 1938, which will was duly

recorded in the office for recording wills at Hollidaysburg, May 13, 1938, in Will Book Vol. 54, p. 32.

W. H. Orr and The First National Bank of Altoona, executors, having filed their first and partial account on March 21, 1939, John Woodcock, Esq., was appointed auditor to pass upon certain questions of law and fact which involved the interpretation of certain provisions of said will so that proper distribution could be made. The said auditor filed his report May 22, 1939, and, upon exceptions being filed and upon the petition of The First National Bank of Altoona, one of the executors, the report was referred back to the auditor for further hearing. On December 11, 1939, the said auditor filed his supplemental and amended report to which Cora E. Hicks, Charles B. and Gertie Hicks, his wife, beneficiaries under the will of the said William B. Hicks, filed exceptions which are now before us.

The exceptions filed all deal with the provisions of the will and the interpretation put upon the same by the auditor. Said provisions are as follows:

"It is directed that securities in value to net an income of about $1200 annually be set aside by executors. Of this amount $500 be paid to Miss Cora E. Hicks, of Altoona, Pa., in quarterly installments of $125.00 each less the commission charged for looking after same; the other $700.00 be paid to Chas. B. and Gertie Hicks, his wife, of Altoona, Pa., in quarterly installments less 5% commission charges for looking after same. This plan to be continued for 5 years pending any one of them becoming incapacitated or ill, then it is at discretion of the executors to set aside their respective securities for immediate use or what arrangement they believe to the best interests concerned. At the end of the five years period, their respective amounts be assigned to them with the recommendation that same be continued with the First National Bank, Trust Department of Altoona, Pa., to look after same under the same plan as has been had since my death and thereby keep the securities intact."

The exceptions taken to the auditor's report are to certain of his findings which are as follows:

1. "We are now satisfied that $27,500 invested in the manner as defined by Mr. Lane will produce an income of 'about $1200' a year. . . ."

2. "We are, therefore, of the opinion that it will meet the clear intention of the testator and at the same time protect the final residuary estate, if during the term of the existence of the trust now under discussion, the State tax imposed upon it shall be paid from the income of the residuary estate. This being done, the income derived from this particular trust would net $1200 a year and meet the intention of the testator."

3. "When and immediately upon the setting up of the corpus of this particular trust the executors are then directed to deduct therefrom, at the rate of 10 percent, the transfer inheritance taxes paid to the Commonwealth of Pennsylvania on this portion of the estate of the testator. . . ."

In order to make a proper determination of this matter we must try to find out what was the intention of testator when he said, "It is directed that securities in value to net an income of about $1200 annually be set aside by Executors." In approaching this question we realize that we are confronted with rather a difficult situation, made more so by the fact that testator did not set forth clearly his intention. When he drew his own will it lacked the care and clarity which of all things should be set forth in such an instrument. This is well illustrated by the fact he attempted to devise one half of a double house, known as 2107½ Seventh Avenue, Altoona, Pa., which he did not own, and misnamed two nieces to whom he made bequests.

Testator stated that securities should be set aside by the executors, and that they should yield a net income of about $1,200 annually. When he speaks of net income it would mean such an income as would remain after the payment or deduction of proper charges against the gross

income. The corpus of the trust estate to be set up by the executors, then, must be such an amount as will yield (after proper deductions) a net income of about $1,200 per annum.

There is at present and was so at the time of the death of testator, a personal property tax of four mills for county purposes: Act of June 17, 1913, P. L. 507, as amended by the Act of April 21, 1933, P. L. 54, 72 PS §4821; also a four-mill tax for State purposes: State Personal Property Tax Act of June 22, 1935, P. L. 414, as amended by the Act of May 18, 1937, P. L. 633, 72 PS §3244. While there are some investments that are exempt, we must take into consideration that in all probability the trustees will have securities that may be taxable and liable for an eight-mill tax. They would then be required to make a proper return for taxable purposes, and see that the tax is paid. In Brown's Estate, 208 Pa. 161, the corpus of an estate was committed to the executor in trust to collect the income and, "after taking any and all necessary expenses, to divide the said net income in equal shares among" certain persons named for life. The court held (p. 165):

"We agree with the court sitting in banc that there is nothing in the case which will relieve the income from the payment of the taxes on the life interests at the expense of the principal of the estate. The corpus of the estate is committed to the executors in trust to collect the income and after deducting the expenses, which include these taxes, to divide the net income among the life tenants."

The learned auditor in the instant case held that this tax should be paid by the executors from the income of the residuary estate. In this we cannot agree, because in our opinion, as we construe the above provision of the will, the tax is a deductible item from gross income and therefore there must be a sufficient estate in trust set up to take care of that expense, the tax, and yet yield a net income of "about $1200 annually."

Exceptants maintain that the learned auditor erred in holding that the transfer inheritance tax should be paid out of the corpus of this particular trust. The Act of June 20, 1919, P. L. 521, sec. 16, as amended by section 4 of the Act of July 12, 1923, P. L. 1078, 72 PS §2352, provides as follows:

"The executor or administrator, or other trustee, paying any legacy or share in the distribution of any estate of a resident decedent subject to the said tax, shall deduct therefrom . . . at the rate of ten per centum upon the whole legacy or sum paid to or for the use of any other person or persons or bodies corporate or politic; . . . No executor or administrator shall be compelled to pay or deliver any specific legacy or article to be distributed subject to tax except on the payment into his hands of a sum computed on its value as aforesaid."

In Elliott's Estate, 113 Pa. Superior Ct. 350, the court held (p. 351):

"Unless the will, deed, grant or gift expressly provide otherwise, the transfer tax is ultimately payable by the legatee, grantee or donee, or out of the property or estate passing to him. It is the transfer of property that is taxed and the tax is payable by the transferee, if he accepts it."

In Uber's Estate, 330 Pa. 417, Justice Stern speaking for the court stated (pp. 419-420):

"Normally, every legacy must pay its own tax. Where a legacy is expressly given tax-free, the tax is payable out of the residuary estate as the only other fund available for that purpose."

And further speaking of the intention of testator providing for tax to be paid on a life estate out of the residuary estate, the court stated (p. 420):

"To indicate such intentions, however, the language of the will should be free from doubt."

Nowhere in the will of decedent is there any specific direction by testator that the inheritance tax on the corpus of the trust estate be paid out of the residuary estate. This being so we agree with the learned auditor in his

conclusion to the effect that the trust estate must bear the 10 percent inheritance tax.

It is argued that the personal property tax, particularly that payable to the State of four mills, is merely an emergency tax, that the act providing for it may be repealed at the next session of the legislature, and that we should take that into account in setting up the corpus of the trust estate. The repeal of the act is very unlikely, for once a form of taxation is invoked it is most improbable that it will be discontinued or even that the tax rate will be lowered. With the many taxing agencies existing, the demand for more revenues, the apparent desire for our Government to guide our daily existence to the minutest detail, and the advocacy of some in authority that the honest, upright, hardworking citizen should be taxed to the limit to create a Utopia at the hands of a beneficent and paternalistic government, we can expect and look forward to more taxes, even though we may hope otherwise. We are of the opinion that we must consider the amount to be set up as the corpus of the trust estate to be governed as of the date of the death of testator, and that the only apparent deduction from the gross income is the eight-mill personal property tax, which may get less or greater before the corpus comes into the hands of the cestuis que trustent at the end of the five years as provided in the will.

Having arrived at the conclusion that under the will there shall be set aside by the executor, as a trust estate, such a sum as will take care of the eight-mill personal property tax and yet yield a net income of about $1,200 annually, we are confronted with what that amount shall be.

Much discussion was had before us, and, from the testimony taken before the auditor, we conclude likewise before him, as to what the corpus of the estate shall be invested in by those in whose hands it is entrusted: whether it shall be United States Government bonds, Federal Housing Administration mortgages, or other types

of investment. This is entirely a matter with the trustees and we cannot say what investments they should make. They must use their discretion, but should make only such investments for the cestuis que trustent as the law authorizes.

The learned auditor, in his original report, directed the executors to set aside as a corpus of the trust estate $32,500. In his supplemental amended report he set aside the sum of $27,500, to be invested, but did not provide that the personal property tax should be paid out of the income derived on said sum. He held that it would require approximately $4,500 more to be set aside to take care of this tax which he held should be paid by the residuary estate.

Mr. Norman Lane, trust officer of The First National Bank of Altoona, testified before the auditor on two occasions. He estimated the amount necessary to be set aside to yield a net income of about $1,200 annually (not taking into consideration personal property tax), an amount of $27,500 to about $36,100. He, the only witness, testified very fully in reference to various types of investments which would meet the legal requirements for investing trust funds. The yield on loans is from 2¾ percent to 5 percent, and at the last hearing he testified as to some funds already invested by the trustee which yield 4½ percent and 5 percent. The trustees may invest money in the United States Government bonds of which the rate of interest is low, but there will be no personal property tax to pay on these bonds. Under the present economic conditions, the many uncertainties of the future, and because of the daily rapid changes which no human being can foretell, it would be impossible to set aside an exact amount and it might be too great or too small.

After giving this matter much thought and upon considering the testimony of Mr. Lane, the only witness, we are of the opinion that the amount of $32,500 which the auditor recommended be set aside in his first report is just and equitable, and will meet our construction of the aforesaid will. We therefore direct that the trust be set

up by the executors in that amount. From the amount of $32,500, as directed to be set up, the executors shall deduct sufficient to pay the 10 percent inheritance tax upon that amount. The balance shall be invested for the cestuis que trustent, and they shall receive the net income, after deducting the personal property tax, if any, in the following proportions: $500 to be paid Miss Cora E. Hicks, of Altoona, Pa., and $700 to Charles B. and Gertie Hicks, his wife, of Altoona, Pa. If the net income is not sufficient to meet these payments as directed under the will, then the net income shall be paid as follows: 5/12 to Cora E. Hicks, and 7/12 to Charles B. and Gertie Hicks, his wife.

*Decree of court*

Now, September 4, 1940,

1. Exceptions 1 and 2 as filed by the cestuis que trustent are sustained and exception 3 is overruled.

2. The executors of the estate of William B. Hicks, deceased, are hereby ordered and directed to set aside the sum of $32,500 in cash in connection with the trust estate of Cora E. Hicks, and Charles B. and Gertie Hicks, his wife.

3. The said executors, out of the funds set aside, shall first pay the transfer inheritance tax to the Commonwealth of Pennsylvania, at the rate of 10 percent on the aforesaid sum directed to be set aside.

4. After deducting the transfer inheritance tax, the executors are directed to invest the balance as a corpus in a trust estate as provided in the will of said testator, and after deducting the personal property tax as due or may become due from the gross income thereof, shall pay (after deducting commissions as provided in said will) to Cora E. Hicks, the sum of $500, and to Charles B. and Gertie Hicks, his wife, the sum of $700. If the net income is not sufficient to meet these payments as directed under the will then the net income shall be paid as follows: 5/12 to Cora E. Hicks and 7/12 to Charles B. and Gertie Hicks, his wife.